**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

ZIE KONE,
        Appellant,

      v.

DEPARTMENT OF THE NAVY,
        Agency.

DOCKET NUMBER
PH-0752-18-0348-I-1

DATE: July 3, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Brian Deinhart, Esquire, Albany, New York, for the appellant.

Richard Dale, Newport, Rhode Island, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which sustained his removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order to correct the legal standards for evaluating the charge and the appellant's affirmative defense of reprisal for his prior Board appeals, we AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2 The appellant, a Scientist, previously filed two Board appeals concerning adverse actions taken against him. *Kone v. Department of the Navy*, MSPB Docket No. PH-0752-13-0217-I-3, Final Order (Feb. 27, 2015) (0217 Final Order). The appeals were joined for processing and the Board issued a Final Order reversing the agency's suspension and reducing the removal to a 30-day suspension. *Id.*; *Kone v. Department of the Navy*, MSPB Docket Nos. PH-0752-13-0217-I-3, PH-0752-13-0413-I-2, Initial Decision at 1 (May 27, 2014). The administrative judge found, and the parties do not dispute, that the individuals involved in the prior actions did not play a role in the removal at issue in the instant appeal. *Kone v. Department of the Navy*, MSPB Docket No. PH-0752-18-0348-I-1, Initial Appeal File (IAF), Tab 40, Initial Decision (ID) at 9-10.

¶3 In April 2017, the appellant requested leave under the Family and Medical Leave Act (FMLA), which the agency approved. IAF, Tab 4 at 12, Tab 28

at 53-55.  The appellant exhausted his 480 hours of FMLA-protected leave in July 2017.  IAF, Tab 28 at 53-55.  The appellant was then absent from work for 39 consecutive days, from January 9 through March 8, 2018.  *Id.* at 26-27, 55.  On some of the days he was absent, the appellant texted his first-level supervisor to let him know he would not be in the office that day for various reasons.  IAF, Tab 14 at 16-29, Tab 15 at 4-17.  For example, from early- to mid-January 2018, the appellant stated he was "not well" or "ill."  IAF, Tab 14 at 16-20.  Beginning on January 17, 2018, he indicated he was seeking treatment at a clinic, and later a hospital.  *Id.* at 21, 25, 27.  Ultimately, in early February 2018, he referred to being scheduled for, and having, unidentified "procedures."  IAF, Tab 15 at 4-8.  Later that month through April 2018, he indicated he was suffering from a "relapse" or relapses.  *Id.* at 6-8, 12.  On at least six different occasions, the appellant's supervisor texted back that the appellant was absent without leave (AWOL).  IAF, Tab 14 at 18-19, 22, Tab 15 at 6, 9, 11, 13, 16.

¶4	On February 1, 2018, the agency issued a letter to the appellant that informed him that he had been absent since January 9, 2018, he was being designated as AWOL, and if he did not return to work by February 9, 2018, his removal would be proposed.  IAF, Tab 4 at 28.  The appellant did not respond to the February 1, 2018 letter and did not return to work.  IAF, Tab 28 at 27, 55.  On March 18, 2018, the appellant's second-level supervisor proposed his removal based on 39 specifications of AWOL, which concerned the appellant's absence on January 2, 2018, and from January 9 through March 8, 2018.  IAF, Tab 4 at 22-27.  After the appellant failed to reply, the agency removed him, effective May 7, 2018.  *Id.* at 12-15.

¶5	The appellant timely filed an appeal to the Board and requested a hearing.  IAF, Tab 1 at 2.  He did not dispute that he was absent during the period at issue, but rather argued that some or all of this absence was protected under the FMLA.  *Id.* at 6.  He raised the affirmative defense of reprisal for his prior Board appeals.  *Id.*  Following a hearing, the administrative judge issued an initial decision

sustaining the removal action. ID at 1. Although she did not sustain the January 2, 2018 specification, she sustained the remaining 39 specifications.[2] ID at 4, 9. The administrative judge found that the appellant failed to prove his claim that the agency violated his rights under FMLA because he had already exhausted all the FMLA-protected leave to which he was entitled for that 12-month period. ID at 5. She also found that the appellant had not shown that his prior Board appeals were a motivating factor in the removal. ID at 13. She further found that the agency proved a nexus between the appellant's misconduct and the efficiency of the service, and deferred to the deciding official's penalty determination. ID at 14-16.

¶6     The appellant has timely filed a petition for review. PFR File, Tab 1. The agency has filed a response, to which the appellant has replied. PFR File, Tabs 5-6.[3]

## DISCUSSION OF ARGUMENTS ON REVIEW

The administrative judge properly sustained the AWOL charge but applied the incorrect burden to the related FMLA claim.

¶7     On review, the appellant does not dispute the administrative judge's finding that he was AWOL as charged. We see no reason to disturb this finding. ID at 2-9. However, we modify the administrative judge's finding that the agency proved its AWOL charge to apply the correct standard. To prove an AWOL charge, an agency must establish that an employee was absent and either his absence was not authorized or his request for leave was properly denied. *Little v. Department of Transportation*, 112 M.S.P.R. 224, ¶ 6 (2009); *Boscoe v.*

---

[2] As observed by the administrative judge, although there are 39 total specifications, there are two specifications 20 itemized. IAF, Tab 4 at 23; ID at 2 n.2. Thus, there are 40 total specifications. IAF, Tab 4 at 23-24; ID at 2 n.2.

[3] The appellant's reply was initially due on or before December 31, 2018, but the filing deadline was extended due to the partial Government shutdown from December 22, 2018, through January 25, 2019. Thus, his reply was timely. We therefore find it unnecessary to address his motion seeking to waive the time limit for his reply. PFR File, Tab 7.

*Department of Agriculture*, 54 M.S.P.R. 315, 325 (1992). Thus, when FMLA is implicated relative to an AWOL charge, the agency, not the appellant, must prove that it complied with the FMLA as part of its overall burden of proving the AWOL charge. *Fairley v. U.S. Postal Service*, 82 M.S.P.R. 588, 590-91 (1999). Here, however, the administrative judge improperly shifted the burden of proof to the appellant to prove his FMLA claim. ID at 5.

¶8      The FMLA allows an employee to take up to 12 weeks of leave per year, paid or unpaid, for various purposes, including his own serious health condition that renders him unable to perform the duties of his position. *See* 5 U.S.C. § 6382(a)(1)(D); *Dias v. Department of Veterans Affairs*, 102 M.S.P.R. 53, ¶ 5 (2006), *aff'd per curiam,* 223 F. App'x 986 (Fed. Cir. 2007); 5 C.F.R. § 630.1203(a)(4). The 12-month leave period "begins on the date an employee first takes leave [under the FMLA] and continues for 12 months" and an employee is not entitled to additional leave under the FMLA "until the previous 12-month period ends." 5 C.F.R. § 630.1203(c).

¶9      The appellant was absent from work for 39 consecutive days, from January 9 through March 8, 2018. IAF, Tab 28 at 26-27, 55. On March 14 and April 3, 2018, the appellant indicated that his doctors would be submitting FMLA paperwork to cover the illnesses he had been suffering since January 2018. IAF, Tab 15 at 8, 12. In response, his first-line supervisor informed him that he could not invoke FMLA again until 12 months had passed since he last invoked FMLA beginning on April 11, 2017, and told him to contact human resources. IAF, Tab 15 at 13-14, 16, Tab 28 at 20, 53. Thus, the appellant presented sufficient evidence to trigger consideration of his absences under the FMLA and the agency has the burden of proving it properly denied him FMLA leave in taking the leave-based action against him. *Fairley*, 82 M.S.P.R. at 591.

¶10     The administrative judge found, and the appellant does not dispute, that he had invoked FMLA coverage beginning April 11, 2017, and exhausted his 480 hours of FMLA-protected leave on July 17, 2017. ID at 5. Thus, she found

that the appellant was not eligible for FMLA coverage again until April 11, 2018, and that all of the instances of AWOL on which his removal was based occurred prior to this date. *Id.* We agree. The agency submitted evidence and argument to prove that the appellant had exhausted his FMLA-protected leave and was not eligible to invoke it again until April 2018. For example, a Human Resources Specialist testified that the appellant used FMLA-protected leave from April 11, 2017, to July 17, 2017, and that he would not have been able to invoke it again until a 12-month period had passed from the date he first invoked it, i.e., April 11, 2018. Hearing Transcript (HT) at 171-72, 174 (testimony of the Human Resources Specialist). The agency also submitted the appellant's leave records which documented his FMLA-protected leave usage and exhaustion in 2017. IAF, Tab 28 at 20-22, 55. Thus, as the administrative judge correctly found, the appellant was not entitled to FMLA-protected leave while he was AWOL from January 9 through March 8, 2018. ID at 4-5. Therefore, the agency met its burden of showing that it complied with the FMLA as part of its overall burden of proving the AWOL charge, and the administrative judge correctly sustained the charge.[4]

---

[4] On review, the appellant states that the administrative judge did not consider a prior miscalculation of his FMLA usage in 2016, which he argues is evidence of his first-line supervisor's bias. PFR File, Tab 1 at 7-8. He argues that the Human Resources Specialist testified that the appellant had more FMLA time remaining but his supervisor designated it AWOL instead. *Id.* at 7. However, this is not an accurate representation of the testimony. The Human Resources Specialist only testified that the appellant took FMLA-protected leave and regarding when such leave was exhausted in 2016 and 2017. HT at 171-72 (testimony of the Human Resources Specialist). Moreover, the administrative judge addressed the appellant's use of FMLA-protected leave in 2016 in the initial decision and detailed that the 2016 miscalculation was corrected and the appellant was allowed to utilize his remaining hours of FMLA leave. ID at 5. The appellant does not dispute the administrative judge's findings regarding his FMLA usage and exhaustion in 2017 as it relates to his AWOL charge.

*The appellant abandoned or waived his affirmative defenses of disability discrimination and retaliation for FMLA and equal employment opportunity (EEO) activity.*

¶11    Before the administrative judge, the appellant raised the affirmative defense of retaliation for FMLA activity. IAF, Tab 19 at 4. He also suggested that his removal was the result of EEO retaliation and the agency's failure to accommodate a disability. *Id.* at 14, 16. However, he did not identify these claims as issues in his prehearing statement. *Id.* at 4. The administrative judge did not identify these discrimination and retaliation claims as issues for adjudication in the prehearing conference summary. IAF, Tab 22 at 3. She did not render findings on the appellant's FMLA and disability discrimination claims in the initial decision. ID at 9. As discussed below, we find that the appellant has abandoned these previously raised affirmative defenses.

¶12    In *Thurman v. U.S. Postal Service*, 2022 MSPB 21, ¶¶ 17-18, we set forth a nonexhaustive list of factors for consideration when determining whether an appellant will be deemed to have waived or abandoned a previously raised affirmative defense. The factors include: (1) the thoroughness and clarity with which the appellant raised his affirmative defense; (2) the degree to which the appellant continued to pursue his affirmative defense in the proceedings below after initially raising it; (3) whether the appellant objected to a summary of the issues to be decided that failed to include the potential affirmative defense when he was specifically afforded an opportunity to object and the consequences of his failure were made clear; (4) whether the appellant raised his affirmative defense or the administrative judge's processing of the affirmative defense claim in his petition for review; (5) whether the appellant was represented during the course of his appeal before the administrative judge and on petition for review, and if he was not, the level of knowledge of Board proceedings possessed by the appellant; and (6) the likelihood that the presumptive abandonment of the affirmative

defense was the product of confusion, or misleading or incorrect information provided by the agency or the Board. *Id.*, ¶ 18.

¶13    Here, the appellant raised the FMLA reprisal affirmative defense in a single sentence in a single pleading. IAF Tab 19 at 4. As to his EEO retaliation and disability discrimination claims, he did not clearly identify them as issues to be decided. *Id.* Although he referred to his requests for accommodation in his prehearing submissions, he did not argue that his removal resulted from the agency's alleged denials of those requests. *Id.* at 14. Further, the appellant's representative appeared to disclaim that he was raising an EEO retaliation claim at the hearing but instead asserted that his only purpose in introducing testimony regarding the appellant's EEO activity was to demonstrate "instances of harassment." HT at 239-40 (discussion on the record). The appellant had the opportunity to object to the administrative judge's prehearing conference summary that included the issues to be determined at hearing; yet, despite objecting to other portions of the prehearing conference summary, he did not object to the summary of his affirmative defenses. IAF, Tab 22 at 3, Tab 23 at 4-5. The administrative judge warned the parties that, absent objection, no issues would be accepted beyond those listed in the prehearing conference summary. IAF, Tab 22 at 1.

¶14    Similarly, the appellant did not raise any argument on review regarding his FMLA reprisal claim. PFR File, Tab 1. The administrative judge appears to have made a finding that the appellant did not prove retaliation for EEO activity, but she does not explain in the initial decision why she reached this finding despite the appellant's specific statement that he was not raising such a claim. ID at 13. The appellant appears to dispute this finding on review, but falls short of asserting that his removal was the result of EEO retaliation. PFR File, Tab 1 at 8, 14. Regarding the disability discrimination claim, the administrative judge found that the appellant did not assert this affirmative defense below and thus did not address this issue in the initial decision. ID at 7 n.4. While the appellant does

not explicitly contest this finding on review, he appears to argue that his reasonable accommodation requests were denied by his supervisors. PFR File, Tab 1 at 12-14.

¶15    Throughout this appeal, the appellant was represented by an attorney and there is no evidence that his abandonment of these affirmative defenses was due to confusion or misleading or incorrect information provided by the administrative judge or the agency. As such, when weighing all these factors together, it is clear that the appellant either did not raise or effectively abandoned the affirmative defenses of disability discrimination and retaliation for his prior EEO and FMLA activity, and we will not consider these issues further. Because the appellant's EEO claim was not properly before her, we vacate the initial decision to the extent that it suggested the appellant did not prove this claim. ID at 13.

We affirm the finding that the appellant failed to establish his affirmative defense of reprisal for his prior Board appeals, as modified to apply the proper standard.

¶16    In finding that the appellant failed to prove his affirmative defense of reprisal for filing prior Board appeals, the administrative judge analyzed the appellant's claim under the *Warren* standard. ID at 9-14; *see Warren v. Department of the Army*, 804 F.2d 654, 656-58 (Fed. Cir. 1986) (establishing the general reprisal standard), *superseded in part by statute as stated in Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 15 (2015) (explaining that the *Warren* standard is inapplicable to claims subject to the burden-shifting standard set forth in 5 U.S.C. § 1221(e)). However, the *Warren* standard does not apply to claims in which an appellant asserted EEO retaliation. *See Mattison v. Department of Veterans Affairs*, 123 M.S.P.R. 492, ¶ 8 (2016) (reflecting that the *Warren* standard does not apply to cases in which an appellant alleges reprisal for activity protected by Title VII). The appellant raised an affirmative defense of retaliation for prior EEO activity in his underlying Board appeals. Specifically, he asserted race discrimination and retaliation for filing an EEO complaint. *Kone*

*v. Department of the Navy*, MSPB Docket No. PH-0752-13-0217-I-1, Initial Appeal File, Tab 4 at 13; 0217 Final Order at 3, 9. Thus, in the instant appeal, the appellant must prove that his prior Board appeals, which included his discrimination claims, were a "motivating factor" in his instant removal. *See Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 32 (stating that the "motivating factor" standard applies in claims of retaliation for filing Board appeals when the underlying Board appeal involved claims of discrimination and retaliation for engaging in EEO activity).

¶17 Nonetheless, although the administrative judge discussed the general *Warren* reprisal standard, she properly relied on the motivating factor standard. ID at 9, 13. She concluded that the appellant had not shown that his prior Board appeals were a motivating factor in this removal action. ID at 13. We clarify on review that the *Warren* standard on which the administrative judge partially relied is not applicable here. *See Mattison*, 123 M.S.P.R. 492, ¶ 8.

¶18 The administrative judge found that it was undisputed that the appellant filed prior Board appeals and that his first-line supervisor, the proposing official, and the deciding official acknowledged that they were aware of this prior protected activity. ID at 9-10. However, she found that none of these agency officials were involved in the discipline underlying those prior appeals. ID at 13. She further found that the record fully supported the agency's stated reason for the removal, the appellant's AWOL charge. *Id.* She thus concluded that the appellant had not shown his prior Board appeals were a motivating factor in the removal. *Id.* We agree. Additionally, we find that the administrative judge's reliance on the *Warren* standard does not change the outcome in this case because the appellant's claim would fail under either of the aforementioned standards.[5]

---

[5] Although the administrative judge discussed the *Warren* standard in advising the appellant of his burdens of proof regarding his affirmative defenses, this error did not harm the appellant. The *Warren* standard is higher than the motivating factor standard for proving retaliation under *Pridgen*. In particular, in order to meet the "genuine nexus" requirement under *Warren*, an appellant must prove, as relevant here, that the adverse employment action was taken because of the protected activity. *Mattison*,

ID at 12-14. Thus, any error committed by the administrative judge in applying this standard has not prejudiced the appellant's rights. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

¶19      On review, the appellant argues that the administrative judge's analysis of his reprisal claim for filing prior Board appeals reflects a misunderstanding of the "cat's paw" theory of liability. PFR File, Tab 1 at 9-10, 15. The appellant argues that the administrative judge erred in finding that he did not demonstrate that his first-line supervisor improperly influenced the proposing and deciding officials. *Id.* He reasons that, under the "cat's paw" theory, this proof is not required but that the bias of the first-line supervisor was automatically imputed to the proposing and deciding officials, regardless of whether they were directly informed of, or influenced by, the bias. *Id.* at 9.

¶20      The U.S. Supreme Court has adopted the term "cat's paw" to describe a situation in which a particular management official, acting because of an improper animus, influences the agency official charged with making the employment decision at issue. *Staub v. Proctor Hospital*, 562 U.S. 411, 415-16 (2011). Although the administrative judge did not specifically refer to the "cat's paw" theory in her analysis, she did consider the appellant's claim regarding the first-line supervisor's alleged bias against the appellant.[6] ID at 13.

¶21      As relevant here, she was not persuaded that the vague testimony of one of the appellant's coworkers that the first-line supervisor asked him about the appellant reflected any retaliatory animus. ID at 12-13. The appellant argues that

123 M.S.P.R. 492, ¶ 8. When a statute prohibits retaliation "because of" protected EEO activity, the employee's claim is subject to a but-for causation standard. *Pridgen*, 2022 MSPB 31, ¶¶ 44-46. "But-for" causation is a higher burden than "motivating factor" causation." *Id.*, ¶¶ 21 n.4, 22, 28.

[6] To the extent the appellant has invoked the cat's paw theory as to his disability discrimination and EEO retaliation claims, we decline to address this argument. PFR File, Tab 1 at 9-10, 15-16. As discussed above, these claims are not properly before us.

the administrative judge mischaracterized the testimony of his coworker. PFR File, Tab 1 at 5-7. He argues that his coworker's testimony was sufficiently specific as to the timing of the conversation between him and the first-line supervisor and as to the topic of discussion. *Id.* at 6-7. We are not persuaded.

¶22    The appellant's coworker testified that, "right at the very beginning" of when the first-line supervisor began supervising the appellant, the first-line supervisor asked the coworker if he knew of the appellant's "issues" and the coworker responded that he had heard rumors about the appellant. HT at 197-98 (testimony of the coworker). He further testified that the first-line supervisor did not ask about any other employees. *Id.* at 198. As the appellant observes, it is possible to surmise that the conversation occurred sometime in early- to mid-2016, based on the testimony of the appellant's supervisor. PFR File, Tab 1 at 6; HT at 56 (testimony of the first-line supervisor). Nonetheless, we agree with the administrative judge's characterization of this testimony as vague and her finding that it did not support a retaliatory motive by the first-line supervisor. ID at 13. The only specific information the coworker was able to provide regarding the substance of the first-line supervisor's questions was that he asked "do you know if [the appellant] even come[s] to the office." HT at 197 (testimony of the coworker). This question does not reflect an improper motive. Rather, it appears related to the appellant's attendance problems, which the appellant's first-line supervisor testified "started within a few months within [him] becoming a supervisor." HT at 60 (testimony of the first-line supervisor). In fact, the supervisor issued the appellant a letter of reprimand for an unexcused absence on August 10, 2016. HT at 60-61 (testimony of the first-line supervisor); IAF, Tab 4 at 34-36. Thus, contrary to the appellant's arguments on review, we find that his coworker's testimony does not evidence retaliatory intent on the part of his first-line supervisor. PFR File, Tab 1 at 7.

¶23    We are also not persuaded that the fact that the appellant's first-line supervisor read the appellant's file is evidence of retaliatory motive. *Id.*; HT

at 56 (testimony of the first-line supervisor). He also testified that he read the files of all his subordinates. HT at 56-57 (testimony of the first-line supervisor). Thus, we discern no evidence of retaliatory motive. Because the administrative judge properly found that the appellant's first-line supervisor had no motive to retaliate against the appellant based on his prior Board appeals, it follows that there is no motive to impute to the proposing and deciding officials. As such, the administrative judge correctly found that the appellant had not shown that his prior Board appeals were a motivating factor in his removal. ID at 13-14.

The administrative judge correctly found that the penalty of removal was reasonable.

¶24     On review, the appellant argues that the deciding official and administrative judge failed to consider provocation as a mitigating factor and that the penalty of removal can thus not be sustained.[7] PFR File, Tab 1 at 17-18, Tab 6 at 6-7. Specifically, he argues that a hostile work environment created by his first-line supervisor, in light of his medical conditions and the failure of the agency to grant his reasonable accommodation request, should have been considered as a mitigating factor because the circumstances provoked his AWOL status. PFR File, Tab 1 at 17. The administrative judge addressed similar arguments below in sustaining the agency's charge. Specifically, she considered but rejected the appellant's claim that he was medically unable to work during the AWOL period. ID at 6-8. She concluded that the appellant's medical documentation did not support his argument that he was incapacitated. ID at 8. The appellant does not

---

[7] On review, the appellant also asserts his provocation argument as an affirmative defense to his removal. PFR File, Tab 1 at 8-9, Tab 6 at 5-6. We decline to consider this claim. First, he did not raise this argument below, IAF, Tab 1 at 6, Tab 19 at 4, and may not now raise it on review, *see Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (finding that the Board will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence); IAF, Tab 22 at 1-3, Tab 23 at 4-5. Moreover, this provocation argument is more appropriately addressed as part of the *Douglas* factor penalty determination analysis. *See Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305 (1981) (identifying, among other mitigating factors, any provocation by others involved in the matter).

dispute this finding on review. In light of the administrative judge's well-reasoned finding that the appellant was not incapacitated, we are not persuaded that his new claim of "provocation," based on his supervisor's alleged harassment, warrants mitigation. If the appellant was not incapacitated, he was obligated to report to work.

¶25 When, as here, the agency's charge has been sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all of the relevant factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), and exercised management discretion within tolerable limits of reasonableness.[8] *Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶ 25 (2014). In determining whether the selected penalty is reasonable, the Board gives due deference to the agency's discretion in exercising its managerial function of maintaining employee discipline and efficiency. *Id.* The Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty the agency imposed clearly exceeded the bounds of reasonableness. *Id.*

¶26 The administrative judge found that the deciding official properly considered the mitigating factors and determined that the penalty of removal was within the tolerable limits of reasonableness. ID at 14-16. In light of the above, we agree with the administrative judge that the deciding official correctly weighed the relevant *Douglas* factors and that the penalty of removal for being AWOL for 39 consecutive days was reasonable. *See, e.g.*, *McCauley v. Department of the Interior*, 116 M.S.P.R. 484, ¶ 14 (2011) (finding that a penalty of removal for more than 20 consecutive workdays of AWOL did not exceed the tolerable limits of reasonableness); *Foreman v. U.S. Postal Service*, 89 M.S.P.R. 328, ¶ 17 (2001) (finding that removal is reasonable for 16 days of AWOL); *Maddux v. Department of the Air Force*, 68 M.S.P.R. 644, 646 (1995) (finding

---

[8] In *Douglas*, 5 M.S.P.R. at 305-06, the Board articulated a nonexhaustive list of factors relevant to the penalty determination in adverse actions.

that removal is a reasonable penalty for approximately 3 weeks of AWOL, despite the fact that there were mitigating factors, including the employee's length of service and his personal problems).

### NOTICE OF APPEAL RIGHTS[9]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

---

[10] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                    *Gina K. Grippando*
                                  _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.